# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 904 | **DATE** | 7/23/2004 |
| **CASE TITLE** | | Brandt vs. Board of Education | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Board of Education's and Defendants' motions to dismiss are granted. (R. 20-1, 21-1, 22-1). Plaintiffs' complaint is dismissed with leave to re-plead by or on 8/6/04 consistent with the Court's opinion. Plaintiff's motion for class certification (R. 18-1) is denied as moot. Status hearing set for 8/10/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN THE DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL D. BRANDT, minor, by | ) | DOCKETED |
| his parent, STEPHEN M. BRANDT; | ) | |
| REBECCA L. DARUGAR, minor, by | ) | JUL 2 6 2004 |
| her parent, LORI DARUGAR; | ) | |
| ALDO S. K. VAN ENCK, minor, by | ) | |
| his parent, SARA KATAYANAGI VAN | ) | |
| ENCK; on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04 C 0904 |
| | ) | |
| BOARD OF EDUCATION OF THE CITY | ) | |
| OF CHICAGO; CHRIS N. KOTIS, individually | ) | |
| and officially; JANICE M. ROSALES, | ) | |
| individually and officially; CHRISTINE | ) | |
| LAUGHLIN, individually and officially; MARY | ) | |
| CLANCY, individually and officially, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Brandt, Darugar, and Van Enck filed suit on behalf of themselves and all others

similarly situated against Defendants Board of Education of the City of Chicago, Chris Kotis,

Janice Rosales, Christine Laughlin, and Mary Clancy. Plaintiffs brought this action pursuant to

the United States Constitution, and 42 U.S.C. § 1983 and 1988, and 28 U.S.C. § 2201, alleging

that Defendants violated and infringed upon Plaintiffs' constitutional rights. (R. 1-1, Compl. ¶

1.) Plaintiffs are minors who are appearing by and through their parents. (*Id.* ¶ 6.) All

Defendants have moved to dismiss the complaint for failure to state a claim pursuant to the

Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motions

to dismiss are granted.

## FACTUAL ALLEGATIONS

At the time of the alleged incidents, Plaintiffs were eighth-grade students in the Regional

Gifted Center program at Jean Baptiste Beaubien Elementary School ("Beaubien School") in

Chicago, Illinois, during the school year 2002-2003. (*Id.* ¶ 2, 7.) The Board of Education of the

City of Chicago ("Board") is a body politic and corporate in charge of overseeing the

management and operations of a system of free schools known as the Chicago Public Schools.

(*Id.* ¶ 9.) Defendant Chris Kotis was the Principal of Beaubien School. (*Id.* ¶ 10.) Defendant

Janice Rosales was the Area Instructional Officer for Region One, Area One, of the Chicago

Public Schools and possessed supervisory responsibilities over the activities at the Beaubien

School. (*Id.* ¶ 11.) Defendant Christine Laughlin was an Assistant Principal of Beaubien

School, and Defendant Mary Clancy was the Gifted Program Coordinator at Beaubien School.

(*Id.* ¶ 12-13.) Plaintiffs allege that Defendants unlawfully threatened, punished, and engaged in

acts of retaliation against them and other students in the eighth-grade gifted program for

designing, printing, and wearing a t-shirt to school against the explicit orders of Principal Kotis

and his assistants. (*Id.* ¶ 2.) Plaintiffs contend that Defendants' unlawful conduct began on or

about February 3, 2003, and continued and escalated in intensity for about four-and-a-half

months. (*Id.* ¶ 3.)

The Beaubien School held an annual contest among eighth-grade students to determine

the design for the class t-shirt. After submitting a design for the Class of 2003 shirt, Plaintiff

Brandt's t-shirt design was not selected to adorn the official class t-shirt. Dissatisfied with the

results of the contest, Plaintiffs then sought to create a t-shirt for the students in the gifted

program. Plaintiffs attached the t-shirt design at issue to the complaint in this action. The image

2

depicts a boy giving a thumbs-up signal with one hand. The other arm ends in a handless nub, from which a leash extends to a dog labeled the "Beaubien Bulldog." The head of the boy occupies roughly half of the space of the entire image. The pupil in one of the boy's eyes is extremely dilated, and the boy's teeth are spaced with at least one tooth-space between each existing tooth. The boy is wearing a shirt that says, "Beaubien Class of 2003," and pants bearing a grid design. Given that Plaintiffs thought only the students in the gifted program would want to wear the shirt, Plaintiffs added the word "Gifties" and the year 2003 to the back of the shirt. (*Id.* ¶ 34, 39, Ex. A, B.) Describing the allure of this "silly" design, Plaintiffs' complaint states that "[t]he attraction of the shirt to the eighth grade students in the gifted program was its irony, that is, the use of the nickname "Gifties" and the silly appearance of the boy in the Design."[1] (*Id.* ¶ 40.)

Before Plaintiffs had the t-shirt printed, Defendants Kotis, Laughlin, and Clancy warned all students in the gifted program that if they wore an unofficial t-shirt to school they would face "serious consequences" and all who disobeyed would face punishment. (*Id.* ¶ 35.) Since

_____

[1] For the benefit of those whose eighth-grade education has not provided a sufficient definition, the relevant meaning of the word "irony" is "the use of words to express something other than and especially opposite of the literal meaning." *Webster's Collegiate Dict.* (1996, 10th Ed.) at 619. In Plaintiffs' case, an *image* and a word combine to produce the alleged irony, but the definition still illuminates this situation. Plaintiffs have alleged that the depiction of a boy with an enormous head, misshapen teeth, one dilated pupil, and a missing right hand is ironic *because of* the appearance of the word "Gifties" on the other side of the shirt. In other words, given the appearance of the boy on the front of the shirt, Plaintiffs liked the design because one would not expect such an image to be connected with gifted students. Indeed, Plaintiffs confirm this analysis in their opposition brief: "The boy in the Design does not look very bright. The eighth graders in the gifted program were thus poking fun at themselves." Plaintiffs conveniently omit that in making this joke, they are also "poking fun" at those with physical deformities. Plaintiffs deride: "Unfortunately, the humor and satire was lost on Defendants." Plaintiffs may rest assured that the Court gets the joke.

3

Defendant Kotis claimed to be concerned about the "safety" of the students wearing an unofficial t-shirt, Plaintiffs drafted a petition for all ninety eighth-grade students to determine if anyone objected to the wearing of an alternative shirt. (*Id.* ¶ 36b-c.) Plaintiffs obtained more than fifty signatures in one morning before school, but teachers later informed the students that if any student signed the petition, he or she would be suspended from school. (*Id.*)

Despite the warnings from Defendants Kotis, Laughlin, and Clancy, Plaintiffs — along with two-thirds of the students in the gifted program — disobeyed their principal, and attended class wearing the t-shirt with Plaintiff Brandt's design on April 1, 2003. (*Id.* ¶ 44.) Defendants Kotis and Clancy declared that Plaintiffs had violated the Uniform Discipline Code (UDC) of the Chicago Public Schools Rule 2-5: "failing to abide by school rules and regulations." (*Id.* ¶ 45a.) Plaintiffs were then confined to their home room classroom throughout the day, were not permitted to attend classes such as computer lab, science lab, and physical education, were not permitted to socialize or go to the lunchroom during lunch, and were compelled to somehow cover up their shirts prior to going to the bathroom. (*Id.* ¶ 45c-g.) Plaintiffs claim that this punishment was equivalent to a mass, partial in-school detention or suspension without the mandated protections of the UDC.

Upon learning of Defendants' conduct, many parents of the eighth-grade students in the gifted program complained to various officers and agents of the Board about the treatment of the students, and requested intervention. (*Id.* ¶ 50.) Several parents called the Board's Department of Law to intervene. Plaintiffs claim that attorneys employed by the Board of Education agreed that if there was no actual threat to the safety of the students, Defendants' behavior was impermissible and a violation of Plaintiffs' First Amendment rights. (*Id.* ¶ 52.)

Given the Department of Law's alleged stance on Defendants' conduct, Plaintiffs

4

believed that they could wear the unofficial t-shirt without suffering any adverse actions. Thus, beginning on May 12, 2003 to May 23, 2003 one or more students in the eighth-grade gifted program wore the unofficial t-shirt on a daily basis. (*Id.* ¶ 57.) According to Plaintiffs, Defendants Kotis, Laughlin and Clancy continually punished the students by confining them to their home room class for the entire day, recording the name of each student wearing the unofficial t-shirt that day, prohibiting them from attending science lab, computer lab, and physical education, prohibiting them from socializing with students in other classes during lunch, and bringing frivolous disciplinary proceedings against the students. Plaintiffs contend that Defendants even encouraged other teachers and staff members to be derisive and sarcastic toward the students by assigning the students exercises at the second or third grade level, and requiring them to write essays before using the computer lab. (*Id.* ¶ 58a-g.)

Given the number of parental complaints regarding the controversy over the wearing of the unofficial t-shirt, Defendant Rosales, proceeding with the advice and approval of the Board, attempted to intervene in the situation at the Beaubien school. (*Id.* ¶ 59-60.) Rosales decided that no disciplinary action would be taken by Defendant Kotis against the students, but declared that if the students continued to wear the unofficial t-shirt, they would remain confined to their home room classroom and would only be allowed to leave the room to attend science, computer science, and physical education. (*Id.* ¶ 61a.) She further suggested that if the students covered up the word "Gifties" on the back of their shirts with duct tape, then there would be no restrictions whatsoever. (*Id.* ¶ 61a-b.) Contrary to Defendant Rosales's stipulations, Defendant Kotis still did not permit the students to attend their regularly schedule classes, and declared that duct tape wasn't enough to cover up the word "Gifties." (*Id.* ¶ 65-66.)

Concerned about the situation at Beaubien school, Rosales also called in a Crisis

Intervention Team consisting of psychologists and social workers to help "devise a plan to ease the hostilities at Beaubien." (*Id.* ¶ 62, 68.) Plaintiffs allege that the Crisis Intervention Team quickly found that no social problem existed between the gifted and regular eighth graders, there was no violence at the school, and there was no safety issue involving the unofficial t-shirt. Plaintiffs further allege that the Crisis Intervention Team confirmed the fact that the safety issue had been fabricated by Kotis. The students were then permitted to wear the unofficial t-shirt and move about school in a normal manner.

Plaintiffs allege that the retaliation nonetheless continued in the form of daily reprimands, detentions, and suspensions for frivolous reasons. (*Id.* ¶ 79.) Several students were prohibited from attending the eighth-grade dinner dance, and on graduation, several students wearing buttons that said "Question Authority" were not permitted to proceed with the ceremony until the buttons had been removed. (*Id.* ¶ 80-81.) Plaintiffs allege that the acts committed by Principal Kotis and other school employees were condoned by the Board of Education of the City of Chicago. (*Id.* ¶ 2.) Plaintiffs contend that Defendant Board abdicated its responsibility and was unwilling to intervene, and the remedies fashioned by Defendant Board were also First Amendment violations. (*Id.* ¶ 82.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When considering a motion to dismiss, the Court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). The Court views the complaint "in the light most favorable to the plaintiff, taking as true

6

all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). *See also Thomas v. Law Firm of Simpson & Cybak*, 354 F.3d 696, 697 (7th Cir. 2004). The Court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999).

## ANALYSIS

Plaintiffs allege that Defendants violated their First Amendment rights to freedom of speech, and that Defendants' conduct amounted to emotional, psychological, and pedagogical abuse. (R.1-1, Compl. ¶ 82-83.) Defendants move to dismiss Plaintiffs' Complaint on the grounds that the wearing of the t-shirt at issue did not merit First Amendment protection as a matter of law, and the Board moves to dismiss on the additional ground that it cannot be held liable as a matter of law for the alleged acts committed by the school Principal and other school employees.

### I. First Amendment

The First Amendment protects the freedom of speech and expressive conduct, and generally prevents the government from proscribing such activities. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542 (1992). The First Amendment rights of free speech and expression are fundamental and highly prized, and 'need breathing space to survive.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 338 (1963). Such freedoms are protected "not only against heavy-handed frontal attack, but also from being stifled by more subtle

governmental interference." *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 544, 83 S. Ct. 889, 892 (1963). The freedom of speech and expression, however, is not absolute. *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49, 81 S. Ct. 997, 1006 (1961).

Defendants assert that since the t-shirt did not contain a statement or symbolic message, and that Plaintiffs liked the t-shirt because it was "silly" and "ironic," the First Amendment does not afford Plaintiffs protection in this case. (R. 1-1, Compl. ¶ 40.) The Court agrees. As discussed below, the protection offered by the Constitution does not extend to Plaintiffs' t-shirts in this case.

The First Amendment forbids the abridgment of speech, including the spoken or written word and some forms of conduct. *Vines v. Board of Educ. of Zion School Dist. No. 6*, 2002 WL 58815, *3 (N.D. Ill. Jan. 14, 2002) (citing *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533 (1989)). The First Amendment protects conduct, symbols, and non-verbal speech which attempt to express an idea or convey a message that will likely be understood by the viewer. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296, 104 S. Ct. 3065, 3069 (1984); *Spence v. State of Washington*, 418 U.S. 405, 409-411 (1974). Plaintiffs contend that the wearing of the shirt conveyed a particularized message of protest against an unreasonable rule promulgated by school administration. Plaintiffs argue that the relevant audience understood the wearing of the shirts as a sign of this protest. The explicit language of the complaint, however, does not support the theory that the message of the shirt was one of protest. Plaintiffs' complaint describes the parents of the children as upset that the children were being punished "for something as trivial as wearing a silly t-shirt." (R. 1-1, ¶ 47.) Also, the word "protest" does not appear in Plaintiff's complaint as a description of Plaintiffs' motivation. Further, when Plaintiffs' complaint

describes the attractiveness of the shirt to the Plaintiffs, the complaint does not mention the value of the shirt as a symbol of protest. Rather, it was the "irony" of the juxtaposition of the image and the word "Gifties" that attracted the gifted members of the eighth-grade class.

As such, this case is analogous to *Oleson v. School District 228*, 676 F. Supp. 820, (N.D. Ill. 1987). In that case, the court addressed the wearing of an earring by a male student in violation of a dress code. Despite the student's claim that the earring expressed his individuality and enhanced his ability to attract young women, the court held that such expressions of individuality are not within the scope of First Amendment protection. The t-shirt design is an expression of the individuality of the gifted section of the eighth-grade class. Accordingly, the First Amendment does not protect Plaintiffs asserted right to wear the shirt in question. Defendants' motions are granted.[2]

Even if the wearing of the t-shirts were within the protected scope of the First Amendment, "[s]peech [or conduct] in a nonpublic forum is subject to significantly greater regulation than speech in a traditional public forum." *Vines*, 2002 WL 58815 at *3 (quoting *Muller v. Jefferson Lighthouse School*, 98 F.3d 1530, 1537 (7th Cir. 1997)). A school is generally considered a nonpublic forum for purposes of the First Amendment, and the school may impose reasonable restrictions on the speech of students and teachers. *Id.* Speech restrictions in a nonpublic forum school that are 'reasonably related to legitimate pedagogical

---

[2] Plaintiffs have alleged that Defendants or teachers under Defendants' control prohibited Plaintiffs from wearing buttons that said "Question Authority" during the eighth-grade graduation ceremony. This allegation is made, however, as part of the description of retaliation taken because of Plaintiffs' stance on the t-shirts — not as an independent basis for a First Amendment claim. Neither party addresses whether or not the button-wearing incident is sufficient, in itself, to state a First Amendment claim. Plaintiffs have fourteen (14) days to file an amended complaint if they wish to attempt to state a claim based on the "Question Authority" buttons.

concerns' do not violate a student's free speech. *Id.* (citing *Muller*, 98 F.3d at 1537-38). Thus, even though students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," school officials may nonetheless prohibit a particular expression of opinion if they can demonstrate that the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker v. Des Moines*, 393 U.S. 503, 506-509, 89 S. Ct. 733, 736-738 (1969).

In this unusual case, it is the Plaintiffs who have made such a showing. In the explicit language of the complaint and subsequent briefing, Plaintiffs have compelled the Court to conclude that the wearing of the t-shirts would "materially and substantially interfere with the requirements of appropriate discipline." *Id.* While Plaintiffs mock Defendants for missing the "humor and satire" of the shirt, Plaintiffs ignore the plain and undisputed fact that the attempted humor of the shirt comes at the expense of physically disabled children. The attempted irony only exists upon Plaintiffs' stated premise that the disfigured boy in the design does not look very bright. It is beyond question that a class t-shirt ridiculing the physically disabled is a threat to the maintenance of appropriate discipline. A rule that students may not wear a shirt bearing this particular design is certainly "reasonably related to legitimate pedagogical concerns." Plaintiffs' "ironic" and "silly" interest in wearing the t-shirts cannot overcome the grave concerns that the t-shirt creates. *See Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 683, 106 S. Ct. 3159, 3164 (1986) ("The schools, as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech and conduct . . . ."); *Vines v. Board of Educ. of Zion School Dist. No. 6*, 2002 WL 58815, 3 (N.D. Ill. Jan. 14, 2002); *see also Oleson*, 676 F. Supp. at 822.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss Plaintiffs' complaint are granted. Plaintiffs have fourteen (14) days to file an amended complaint in conformity with this opinion.

Dated:  July 23, 2004          ENTERED

_____
AMY J. ST. EVE
United States District Court Judge